UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| CHRISTOPHER OLDSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 3:23-cv-00035-GFVT |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM** |
| COL. PHILLIP BURNETT, JR., *et al.*, | ) | **OPINION & ORDER** |
| | ) | |
| Defendants. | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on the Motion to Dismiss filed by Defendants Burnett, Rogers, Stapleton, and Walker.  [R. 4.]  Plaintiff Oldson alleges he was unconstitutionally assaulted by State Police Troopers.  Now, the Troopers' supervisors ask the Court to dismiss all claims against them because they did not participate in the assault.  In the alternative, they claim immunity from suit.  For the following reasons, the Defendants' Motion to Dismiss **[R. 4]** is **GRANTED IN PART AND DENIED IN PART**.

I

On May 25, 2022, the Kentucky State Police ("KSP") received reports of a domestic disturbance at Plaintiff Oldson's home.[1]  [R. 1 at 3.]  In response, KSP dispatched Troopers to his residence.  *Id.*  When the Troopers arrived, Mr. Oldson "immediately knelt on the ground and put his hands behind his head."  *Id.*  As Mr. Oldson knelt unarmed, "[t]he Troopers [] immediately and without any justification assaulted, and viciously attacked and battered [Mr.

---

[1] The facts recounted here are taken from Plaintiff's Complaint.  [R. 1.]  At the Motion to Dismiss stage, the Court presumes their truth and makes reasonable inferences in Plaintiff Oldson's favor.

Oldson], throwing him face down on the gravel on which he knelt, and pummeling him with their fists and kicking him with their feet." *Id.* After this assault, Plaintiff Oldson states he was handcuffed twice without reason and ultimately released without being "cited, arrested for or charged with any offense." *Id.* at 3–4.

The Troopers who allegedly assaulted Mr. Oldson are trained and supervised by the moving Defendants Colonel Burnett, Lieutenant Colonel Rogers, Major Stapleton, and Captain Walker (collectively, "the Supervisory Defendants"). *Id.* at 2. After the incident, Mr. Oldson states that "the Troopers, with the assistance of one or more of [sic] the Supervisory Defendants, covered up their brutal assault on and battery of Plaintiff[.]" *Id.* at 4. According to Mr. Oldson, excessively forceful behavior of the type he endured is "neither anomalous [n]or unusual," within the KSP. *Id.*

Indeed, he states that KSP supervisors have inculcated a "culture of brutality and impunity" among their subordinate troopers. *Id.* at 4, 5. "[B]etween 2015 and 2020," he alleges, "KSP troopers killed more people in rural communities than any other law enforcement agency in America."[2] *Id.* at 5 n.3. Mr. Oldson further references prior KSP "scandals" involving the "Warrior Mindset," "sham investigations[,] and routine exonerations of officers" accused of misconduct. *Id.* at 5. He charges the Supervisory Defendants with "fail[ing] and refus[ing] to implement the reforms and remedial training necessary to eradicate" the KSP's culture of misconduct. *Id.* at 5. Ultimately, he avers that the Supervisory Defendants' failings "led directly to the brazen and shocking physical attack on Plaintiff." *Id.* Although Mr. Oldson does not

---

[2] To support this proposition, he directs the Court to an online article that the Court will not consider at the Motion to Dismiss stage. *Nixon v. Wilmington Tr. Co.*, 543 F.3d 354, 357 n.2 (6th Cir. 2008) (explaining that "a court may [only] consider a document not formally incorporated by reference in a complaint when the complaint refers to the document and the document is central to the [plaintiff's] claims").

allege that the Supervisory Defendants were present during the attack, he states that they "knowingly participated or acquiesced in, contributed to, encouraged, implicitly authorized[,] or approved" the excessive force through improper training and management. *Id.* at 3.

On May 16, 2023, Mr. Oldson filed suit against the Supervisory Defendants and the five Troopers who allegedly assaulted him. [R. 1.] Mr. Oldson brings claims against these Defendants in their individual capacities under the Fourth and Fourteenth Amendments to the United States Constitution. *Id.* at 5–6. *See also* 42 U.S.C. § 1983. He additionally asserts several individual capacity state tort claims including negligence, gross negligence, assault, and battery. [R. 1 at 6.] Now, the Supervisory Defendants move to dismiss these federal and state law claims. [R. 4.]

**II**

The Supervisory Defendants argue that Plaintiff's federal and state claims fail because the Supervisory Defendants did not assault Plaintiff Oldson and were not present during the incident. Alternatively, the Supervisory Defendants assert immunity from suit.

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the plaintiffs' complaint. Fed. R. Civ. P. 12(b)(6). In reviewing a Rule 12(b)(6) motion, a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). However, a court "'need not accept as true legal conclusions or unwarranted factual inferences.'" *Id.* (quoting *Gregory v. Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. 2000)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other

3

words, "[t]he factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555).

### A

First, the Supervisory Defendants argue that the Mr. Oldson fails to state federal Constitutional claims against them because their "job titles are the only connection between them and the events described in the Complaint." [R. 4 at 6.] Mr. Oldson rejects this characterization, stating that the Supervisory Defendants bear direct responsibility because of their own managerial misconduct. [R. 6 at 2–3.]

### 1

42 U.S.C. § 1983 provides a mechanism for an excessive force plaintiff to seek relief from the responsible government actors. *See, e.g.*, *Graham v. Connor*, 490 U.S. 386, 390–95 (1989). To prevail, the § 1983 plaintiff must prove "(1) that he was deprived of a right secured by the Constitution or laws of the United States, and (2) that he was subjected or caused to be subjected to this deprivation by a person acting under color of state law." *Gregory*, 220 F.3d at 441. A § 1983 excessive force claim "analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham*, 490 U.S. at 394; *see also Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979) ("[S]ection [1983] is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes.").

"Excessive force claims [] can be raised under the Fourth, Eighth, and Fourteenth Amendments." *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013) ("Which amendment

should be applied depends on the status of the plaintiff at the time of the incident; that is, whether the plaintiff was a free citizen, convicted prisoner, or fit in some gray area in between the two."). If the plaintiff was a free citizen at the time of the incident, "[t]he Fourth Amendment's prohibition against unreasonable seizures" applies. *Id.*; *see also Gambrel v. Knox Cnty.*, 25 F.4th 391, 403 (6th Cir. 2022) (Fourth Amendment prohibits the use of "gratuitous violence" against a suspect who poses no danger to police).

An officer sued under a Constitutional Amendment for excessive force is liable if he "(1) actively participated in the use of excessive force, (2) supervised the officer who used excessive force, or (3) owed the victim a duty of protection against the use of excessive force." *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997). But the supervisory liability contemplated by *Turner* is not doled out merely on the basis of *respondeat superior*.

Rather, "to establish personal liability for a failure to train and supervise," a plaintiff must show that "the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Coley v. Lucas Cnty.*, 799 F.3d 530, 542 (6th Cir. 2015) (internal citation omitted); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) ("At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate."). Notably, a supervisor can encourage or authorize the use of excessive force even if he was not physically present during the excessively forceful incident. *Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016). Still, active misconduct is required: a supervisor's "mere failure to act" is not sufficient for liability. *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006) (citation

5

omitted). Moreover, "a causal connection between" the supervisor's "wrongful conduct and the violation alleged" increases the likelihood of supervisory liability.[3] *Peatross*, 818 F.3d at 242.

**2**

As a threshold matter, the Court must determine the Constitutional right at issue. Mr. Oldson brings claims against the Supervisory Defendants under the Fourth and Fourteenth Amendments to the United States Constitution. [R. 1.] But as the Court noted in a prior Order in this action, "the Fourteenth Amendment applies only to excessive force claims brought by pre-trial detainees." [R. 20 at 1]; *Graham v. Connor*, 490 U.S. 386, 388 (1989). Because Mr. Oldson does not allege that he was a pre-trial detainee, he "has no objection to the dismissal of his claims against Defendants under the Fourteenth Amendment." [R. 6 at 1.] Accordingly, the Court will dismiss Mr. Oldson's Fourteenth Amendment Claim against the Supervisory Defendants. Now, his Fourth Amendment Claim is his only remaining Constitutional Claim.

Mr. Oldson states a Fourth Amendment excessive force Claim against the Supervisory Defendants. Plaintiff Oldson alleges that the Supervisory Defendants improperly hired, supervised, and trained. [R. 1 at 3.] He states that the Supervisory Defendants attempted to cover up the Troopers' use of excessive force on Mr. Oldson. *Id.* at 4. Further, Mr. Oldson avers that the KSP routinely fails to properly investigate allegations of misconduct. *Id.* at 5. He cites the Supervisory Defendants' policy violations and refusal to implement remedial measures like body cameras, dash cameras, and extra training. *Id.* at 3, 5. He also asserts a direct causal connection between the Supervisory Defendants' misconduct and the alleged Constitutional violation. *Id.* at 5 (stating that the Supervisory Defendants' managerial failures "led directly" to

---

[3] If this theory of liability calls to mind the concept of *Monell* municipal liability, there is good reason for that. The causal link prerequisite for supervisory liability is the "same concept that requires that the implementation or execution of a governmental policy or custom be shown before liability can be imposed on a municipality." *Hays v. Jefferson Cnty.*, 668 F.2d 869, 872 (6th Cir. 1982) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)).

6

the excessive force used against him).  Finally, Mr. Oldson "goes a step further by alleging that" the KSP is no stranger to federal excessive force lawsuits and prosecutions.  *Id.* at 4; *Peatross*, 818 F.3d at 243.  He states that his assault was a part of an "ongoing pattern of excessive force and brutal beatings inflicted by troopers of the [] KSP."  *Id.* at 2.

      These contentions are sufficient to allege that the Supervisory Defendants "'at least implicitly authorized, approved, or knowingly acquiesced in the [Troopers'] unconstitutional conduct[.]'"  *Peatross,* 818 F.3d at 242 (quoting *Coley*, 799 F.3d at 542); *see Peatross*, 818 F.3d at 242 (explaining that a supervisor need not "have physically put his hands on the injured party or even physically been present at the time of the constitutional violation" for supervisory liability to attach); *id.* at 243 (excessive force plaintiff stated a claim for supervisory liability when he alleged failure to train, failure to investigate similar incidents, attempted coverup, and a pattern of excessive force within the police department); *Coley*, 799 F.3d at 542 (allegations of failure to supervise, failure to train on excessive force, failure to investigate excessive force claims, and attempted cover up of plaintiff's excessive force incident stated a claim for supervisory liability); *contra Combs v. Wilkinson*, 315 F.3d 548, 558 (6th Cir. 2002) (no liability for supervisor who was not present during excessive force incident and was not alleged to bear any responsibility for the incident).

      Accordingly, because the Court finds that Mr. Oldson states an excessive force claim against the Supervisory Defendants, it will not dismiss the Plaintiffs' Fourth Amendment Claim against them.  Now, Mr. Oldson's Fourteenth Amendment Claim is gone, but his Fourth Amendment and state law Claims remain.

**B**

Next, the Supervisory Defendants again assert that they cannot be liable for the state torts when they were not physically present during or involved in the incident. [R. 4 at 6–7.] Again, this argument fails.

**1**

As to the negligence and gross negligence claims, it is easy to see why. The Court need not reach the complexities of vicarious liability for these torts because Mr. Oldson alleges sufficient *independent* misconduct by the Supervisory Defendants to state claims against them. He alleges a cover up, improper hiring, policy violations, and failures to train, supervise, and remediate even in the face of recurring abuses. *See Sparks v. Re/Max Allstar Realty, Inc.*, 55 S.W.3d 343, 348 (Ky. Ct. App. 2000) ("Gross negligence is a conscious and voluntary act or omission which is likely to result in grave injury when in face of clear and present danger of which alleged tortfeasor is aware.") (internal citation omitted); *Wright v. House of Imports, Inc.*, 381 S.W.3d 209, 213 (Ky. 2012) ("A common law negligence claim requires proof of (1) a duty owed by the defendant to the plaintiff, (2) breach of that duty, (3) injury to the plaintiff, and (4) legal causation between the defendant's breach and the plaintiff's injury."). Further, in finding that Mr. Oldson stated a Fourth Amendment Claim against the Supervisory Defendants, the Court already determined that he alleged more than simple negligence. *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006) ("[§ 1983 Supervisory] liability must lie upon more than a mere right to control employees and cannot rely on simple negligence."). Accordingly, a 12(b)(6) dismissal of the negligence and gross negligence claims would be inappropriate.

**2**

With respect to the torts of assault and battery, the waters become muddier. Any potential liability for those torts must be vicarious (as opposed to direct) because the Supervisory Defendants did not physically participate in the alleged assault and battery.

The Supervisory Defendants correctly point out that under Kentucky law, "there is no vicarious liability on the part of a public official for acts of subordinates in which the official was not directly involved." *Franklin Cnty. v. Malone*, 957 S.W.2d 195, 199 (Ky. 1997), *overruled on other grounds by Commonwealth v. Harris*, 59 S.W.3d 896 (Ky. 2001) *and Yanero v. Davis*, 65 S.W.3d 510 (Ky. 2001); *Smith v. Franklin Cnty.*, 227 F. Supp. 2d 667, 680 (E.D. Ky. 2002) ("[P]ublic officers in Kentucky are not responsible for the negligence of those employed by them if they have employed persons of suitable skill.").[4] Direct involvement means that the official "bear[s] [] personal responsibility." *Bd. of Trs. of Univ. of Ky. v. Hayse*, 782 S.W.2d 609, 615 (Ky. 1989), *overruled on other grounds by Yanero*, 65 S.W.3d at 510. The prototypical example of a personally responsible supervisor is one who knowingly hires an incompetent subordinate. *Osborne v. Aull*, No. 2010-CA-001073-MR, 2012 WL 3538276, at *6 (Ky. Ct. App. Aug. 17, 2012); *Yanero*, 65 S.W.3d at 528. Moreover, the contours of the rule suggest that a supervisor can be liable for an incompetently hired subordinate's tort even if the supervisor did not physically participate in the tortious conduct.

Taking Mr. Oldson's allegations in the light most favorable to him, he has stated a claim for vicarious intentional tort liability under Kentucky law. Mr. Oldson alleges that the Supervisory Defendants failed "to employ qualified persons for positions of authority[.]" [R. 1

---

[4] The Court cannot find any authority indicating that the result would be different when a subordinate commits an intentional tort. *Cf. Patterson v. Blair*, 172 S.W.3d 361, 366–70 (Ky. 2005) (explaining that an employer can be vicariously liable for intentional torts committed by its employees). And neither side provides any arguments on this point.

at 3.] He states that this failure "resulted" in the attack he endured. *Id.* He repeatedly alleges that the Supervisory Defendants bear personal responsibility for the alleged assault and battery. *Id.* at 5. At the 12(b)(6) stage, this is enough. *Contra Malone*, 957 S.W.2d at 200 (supervisor not vicariously liable when he was not negligent and could not have reasonably anticipated the negligence of his subordinate). Although Mr. Oldson does not specifically allege the tort of negligent hiring, the standard for 12(b)(6) review militates in favor of the sufficiency of the allegations. Accordingly, the Court declines to dismiss Mr. Oldson's assault and battery claims against the Supervisory Defendants at this time. At this point, the state claims against the Supervisory Defendants remain, as does the Fourth Amendment Claim.

### C

But these surviving claims may not proceed until the Court addresses Defendants' various immunities. The Supervisory Defendants assert that they enjoy qualified immunity as to the federal and state claims. Federal qualified immunity can shield officers sued in their individual capacities from liability for federal Constitutional claims. State qualified immunity may protect officers from individual capacity state law claims.

As a threshold matter, a party asserting immunity under the auspices of 12(b)(6) faces an uphill battle. *See Siefert v. Hamilton Cnty.*, 951 F.3d 753, 761 (6th Cir. 2020) ("Like in our sister circuits, here it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity."); *id.* ("[O]ne might say that 'Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground of dismissal.'" (quoting *Jacobs v. City of Chicago*, 215 F.3d 758, 775 (7th Cir. 2000) (Easterbrook, J., concurring))).

**1**

Federal qualified immunity protects "government officials performing discretionary functions" from suit "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Ascertaining whether a government official is entitled to qualified immunity is a two-step inquiry. A court must first "determine whether the plaintiff has alleged facts which, when taken in the light most favorable to [him], show that the defendant-official's conduct violated a constitutionally protected right[.]" *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 727 (6th Cir. 2011) (alteration in original) (citation omitted). Next, the Court should "determine whether that right was clearly established such that a reasonable official, at the time the act was committed, would have understood that his behavior violated that right." *Id.* (citation omitted).

Here, Mr. Oldson alleges a violation of a constitutionally protected right. Plaintiff's Complaint states that as he knelt unarmed with his "hands behind his head," the Troopers threw him "face down on the gravel [], pummeling him with their fists and kicking him with their feet." [R. 1 at 3.] These allegations state a claim under the Fourth Amendment's prohibition on excessive force. *See Gambrel v. Knox Cnty.*, 25 F.4th 391, 403 (6th Cir. 2022) (Fourth Amendment prohibits the use of "gratuitous violence" against an suspect who poses no danger to police); *Peatross v. City of Memphis*, 818 F.3d 233, 245 (6th Cir. 2016) (noting that the right to be analyzed in the supervisory liability context is the right violated by the excessively forceful subordinate officers (as opposed to a right to proper training or supervision)); *Coley v. Lucas Cnty.*, 799 F.3d 530, 539–42 (6th Cir. 2015) (determining that a supervisor did not enjoy

qualified immunity after finding that the right violated by the excessively forceful subordinates was clearly established).

Further, the reasonable officer would have known at the time of the incident that it is unlawful to punch and kick a suspect who is not resisting. *See Meadows v. City of Walker*, 46 F.4th 416, 422 (6th Cir. 2022) ("It has been clearly established *for several years* in the Sixth Circuit that an officer cannot use injurious physical force to subdue a suspect that is not actively resisting arrest.") (emphasis added); *Shreve v. Jessamine Cnty. Fiscal Ct.*, 453 F.3d 681, 688 (6th Cir. 2006) ("Cases in this circuit clearly establish the right of people who pose no safety risk to the police to be free from gratuitous violence during arrest.").

The Supervisory Defendants resist this conclusion, insisting that qualified immunity forecloses liability when they did not personally put their hands on Mr. Oldson. But Sixth Circuit precedent says otherwise. *See Peatross*, 818 F.3d at 245 (denying qualified immunity to a supervisor who was not physically present during the excessive force incident because the plaintiff "need only show that the right that [the subordinate officers] violated was clearly established at the time of the violation"); *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011) ("When the qualified immunity defense is raised at the pleading stage, the court must determine only whether the complaint 'adequately alleges the commission of acts that violated clearly established law.'" (quoting *Back v. Hall*, 537 F.3d 552, 555–56 (6th Cir. 2008))).

Plaintiff's Complaint alleges a brutal and unjustifiable assault. "The law simply does not allow government officials to use qualified immunity to escape liability for such wrongs." *Peatross*, 818 F.3d at 246. Accordingly, the Supervisory Defendants are not entitled to federal qualified immunity at the 12(b)(6) stage and the Plaintiff's Fourth Amendment claim against them may proceed.

**2**

Finally, the Court addresses the Supervisory Defendants' contention that they enjoy state qualified immunity as to Plaintiff's pendent state law claims.

In Kentucky, "[q]ualified official immunity applies to the negligent performance by a public officer or employee of (1) discretionary acts or functions, *i.e.*, those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment; (2) in good faith; and (3) within the scope of the employee's authority." *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001). But such immunity does not extend to a state official's "negligent performance of a ministerial act, *i.e.*, one that requires only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts." *Id.* While a discretionary act involves a "quasi-judicial or policy making decision[,]" a ministerial act is one the "employee has no choice but to do[.]" *Marson v. Thomason*, 438 S.W.3d 292, 297 (Ky. 2014); *See Brown v. S.F.*, No. 2011-CA-001898-MR, 2013 WL 1697766, at *7 (Ky. Ct. App. Apr. 19, 2013) ("Promulgation of rules is a discretionary function; enforcement of those rules is a ministerial function.") (quoting *Yanero*, S.W.3d at 529)).

Defendants' Motion assumes 12(b)(6) dismissal of Plaintiff's state law claims, and as such does not provide any developed argument as to state immunity. [R. 4 at 7–9.] Plaintiff responds by stating that he "expects to find in discovery that the Troopers' conduct violated KSP policies." [R. 6 at 2.] Failure to train subordinates as to their duties under existing policies, he correctly points out, is ministerial. *Id.* at 3; *Finn v. Warren Cnty.*, 768 F.3d 441, 449 (6th Cir. 2014) (explaining that under Kentucky law, enforcing settled policies and training employees on their duties under such policies are ministerial functions).

Because Kentucky state qualified immunity requires a fact intensive inquiry, courts may struggle to determine its application without the benefit of discovery. *Id.* To further complicate matters, Plaintiff references both discretionary and ministerial acts. The decision not to implement body cameras, for instance, may involve discretion. But a failure to "enforce existing policies" is ministerial. [R. 1 at 3.] Because the Plaintiff states that his injuries resulted in part from the Supervisory Defendants' negligent failure to enforce *existing* policies, it is plausible that the acts complained of are ministerial. Accordingly, at the 12(b)(6) stage, the Court cannot say as a matter of law that state qualified immunity applies. Hence, the Court will allow the state law claims to proceed.

### III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. The Supervisory Defendants' Motion to Dismiss **[R. 4]** is **GRANTED IN PART AND DENIED IN PART;**

2. The Supervisory Defendant's Request to Dismiss Plaintiff's Fourteenth Amendment Claim is **GRANTED**;

3. Plaintiff's Fourteenth Amendment Claim against Defendants Burnett, Rogers, Stapleton, and Walker is **DISMISSED WITH PREJUDICE;**

4. The Supervisory Defendant's Request to Dismiss Plaintiff's Fourth Amendment Claim is **DENIED**; and

5. The Supervisory Defendants' Request to Dismiss Plaintiff's state tort claims is **DENIED**.

This the 14th day of February, 2024.



Gregory F. Van Tatenhove
United States District Judge